# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | **CRIMINAL NO. 1:06-CR-0234** |
| | : | |
| v. | : | **(Judge Conner)** |
| | : | |
| **VALENTINO HENDERSON** | : | |

## MEMORANDUM

Presently before the court is a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2255[1] filed by petitioner Valentino Henderson. Petitioner's motion collaterally challenges his federal conviction, alleging that his trial counsel, Thomas Korey Leslie, Esquire ("Attorney Leslie"), was ineffective in violation of the Sixth Amendment of the United States Constitution. Specifically, petitioner claims that Attorney Leslie (1) failed to object to testimony containing possible hearsay statements, (2) failed to move to suppress evidence found during the search of his house, and (3) failed to move to suppress statements made by petitioner when he was held in custody. The court held an evidentiary hearing on the petition on July 14, 2009. For the reasons that follow, the petition shall be denied.

## I. Background

On January 9, 2007, petitioner was found guilty of conspiracy to distribute and possess with intent to distribute cocaine hydrochloride in violation of 21 U.S.C. § 846, and with distribution and possession with intent to distribute cocaine hydrochloride in

---

[1] See 28 U.S.C. § 2255 ("A prisoner in custody under sentence of a [district] court . . . claiming . . . that the sentence was imposed in violation of the Constitution or laws of the United States . . . may move the court which imposed the sentence to vacate, set aside or correct the sentence.").

violation of 21 U.S.C. § 841(a)(1). Petitioner was sentenced to 160 months' imprisonment on each count, to be served concurrently, five years supervised release, and to pay aggregate fines, community restitution, and special assessments of $1200. Following his conviction, petitioner filed a direct appeal, see United States v. Henderson, 289 F. App'x 485 (3d Cir. 2008), in which he argued: (1) that the hearsay-laden testimony of two witnesses at trial should not have been admitted and (2) that his counsel's performance was constitutionally deficient. Id. at 487. The court of appeals dismissed petitioner's claims, finding no plain error on the record of the trial court's decision. In its August 14, 2008 opinion, the court of appeals observed that a habeas corpus petition, 28 U.S.C. § 2255, is the proper vehicle to raise an ineffective assistance of counsel claim. Id. at 487-88. Petitioner filed the instant petition for writ of habeas corpus on April 2, 2009.

## II. **Discussion**

Petitioner claims that Attorney Leslie's performance was so deficient that it deprived him of his Sixth Amendment right to counsel. Specifically, he claims that Attorney Leslie provided ineffective assistance by failing to object to the hearsay statements of a confidential informant, which were conveyed to the court by a police officer witness, and for failing to call the confidential informant as a witness during the defense case-in-chief. Additionally, petitioner asserts that Attorney Leslie was ineffective for failing to attempt to suppress evidence obtained from the search of petitioner's house. Lastly, petitioner claims his attorney was ineffective for failing to object to the testimony of police officers regarding his post-arrest statements, as he now claims the statements were illegally gathered.

2

A claim for ineffective assistance of counsel is governed by the two-pronged test set forth in Strickland v. Washington, 466 U.S. 668 (1984). To prevail on an ineffective assistance claim, a petitioner must show that: (1) counsel's representation fell below an objective standard of reasonableness, and (2) the deficient representation was prejudicial to the petitioner. Id. at 688. In determining whether counsel has met the objective standard of reasonableness, courts must be highly deferential toward trial counsel's conduct. See id. at 686. In addition, counsel cannot be deemed ineffective for failing to raise a meritless claim. See United States v. Saunders, 165 F.3d 248, 253 (3d Cir. 1999). To satisfy the prejudice prong, a petitioner must show a reasonable probability that, but for the errors of his or her counsel, the outcome of the proceeding would have been different. Strickland, 466 U.S. at 694. In order to determine whether counsel's alleged failures led to unconstitutional ineffectiveness, the court must separately consider the merit of each of petitioner's claims.

### A. The Testimony of Trooper Cotroneo

Petitioner asserts that Attorney Leslie's performance was ineffective because he failed to object to the hearsay statements of a confidential informant, entered into evidence through the testimony of Trooper Anthony Cotroneo ("Trooper Cotroneo"). Additionally, petitioner alleges that Attorney Leslie was ineffective for not calling the confidential informant as a witness.

The court finds that Attorney Leslie's performance did not fall below an objective standard of reasonableness in the execution of his trial strategy. The defense's theory was that the confidential informant was not a credible source of evidence, and lied in order to set petitioner up. (Tr. 102). Attorney Leslie presented evidence at trial that the

3

police began mail surveillance of petitioner's home as a result of a tip from the confidential informant. (Id. at 101). The substance of the alleged tip was that one to two kilograms of cocaine was being sent to petitioner from California every week to every other week. Id. Attorney Leslie presented evidence that during the first nine months of the surveillance period, no drugs were intercepted. (Id. at 102). The defense argued that the informant's "information was not reliable, . . . [and] . . . it would be [easy] to set someone up if you really wanted to." (Id.) In order to pursue this defense, Attorney Leslie was required to permit Trooper Cotroneo to explain what he had been told by the informant, and compare that information to the evidence that developed following the tip. Tactically, Attorney Leslie believed that the best defense was to demonstrate the informant's tendency to exaggerate or to provide inaccurate information. If Attorney Leslie could establish either of these traits, the jury would be more likely to conclude that petitioner was ultimately the victim of a set-up by police officers who were frustrated that a tip had not borne fruit.

During trial, Attorney Leslie did not object to the testimony of Trooper Cotroneo. Instead, he questioned Trooper Cotroneo on the information obtained from the informant. As the Third Circuit recognized on petitioner's direct appeal, "[h]ad [the defense objected and] the District Court stricken the trooper's statement as hearsay . . . it would have gutted the defense's theory of [petitioner's] innocence." Henderson, 289 F. App'x at 488. Without the testimony of Trooper Cotroneo there would have been no evidence of a set-up presented during trial. This trial tactic was reasonable, if ultimately unsuccessful. See Buehl v. Vaughn, 166 F.3d 163, 169 (3d Cir. 1999) (explaining that courts must be "'highly deferential' and 'indulge a strong presumption' that, under the

4

circumstances, counsel's challenged actions 'might be considered sound . . . strategy'" (quoting Strickland, 466 U.S. at 689)). Therefore, Attorney Leslie's performance was not ineffective.

Petitioner also contends that Attorney Leslie's failure to investigate the confidential informant and call him as a witness deprived him of his right to confront his accuser. While counsel has a constitutional duty to investigate evidentiary leads, the decision to restrict or limit an investigation flows from strategic choices which are permitted to the extent that reasonable professional judgements support the attorney's course of conduct. Wiggins v. Smith, 539 U.S. 510, 521 (2003) (citing Strickland, 466 U.S. at 690-91). "[T]he [petitioner] is most likely to establish incompetency where counsel's alleged errors of omission or commission are attributable to a lack of diligence rather than an exercise of judgement." Thomas v. Varner, 428 F.3d 491, 501 (3d Cir. 2005) (citing 3 WAYNE LAFAVE ET AL., CRIMINAL PROCEDURE 11.10(c ), at 714 (2d ed. 1999)).

Attorney Leslie's decision not to call the confidential informant was a strategic decision which may be considered sound trial strategy and not ineffective assistance. See Thomas, 428 F.3d at 501. Attorney Leslie believed that calling the confidential informant to the stand would be a waste of time, and possibly damaging to petitioner's case because the confidential informant was a government-friendly witness. (Tr. 100). Furthermore, Attorney Leslie believed that as the government's confidential informant, the witness would advocate for the government and be difficult to control on the stand. (Id.) Attorney Leslie reasonably concluded that the law enforcement officials would serve as the best witnesses to put on the stand, and that evidence of the alleged set-up would be fully conveyed through their testimony. (Tr. 123). In addition, Attorney Leslie believed

5

that if he met with the confidential informant, it might "tip [his] hand" to the government, resulting in negative ramifications for his client's case. (Tr. at 100-01). The court finds that Attorney Leslie's actions were motivated by reasonable tactical choices rather than a lack of diligence. Attorney Leslie's actions do not constitute ineffectiveness, and his actions were reasonably necessary to the petitioner's trial strategy.[2]

### B. Suppression of Physical Evidence Found in Petitioner's Home

Petitioner argues that his attorney was ineffective for failing to file a motion to suppress evidence allegedly seized from an illegal search of his home in violation of his Fourth Amendment rights. Petitioner claims that Roberta Henderson ("Henderson"), his wife, consented to the search only after unlawful influence was applied upon her by law enforcement officers. Petitioner alleges that Attorney Leslie's failure to move to suppress the fruits of the search was unreasonable and caused prejudice to him resulting in a violation of the Sixth Amendment.

According to petitioner, postal inspector Yvette Thomas ("Inspector Thomas") coerced Henderson's consent when she threatened to remove Henderson's children from the home and place them in state care unless Henderson consented to a search. Allegedly, Inspector Thomas informed Henderson that if she refused to cooperate, a

---

[2] Petitioner alleges that Attorney Leslie's failure to call the confidential informant to testify, and his allowance for the hearsay testimony to enter the record without objection, caused him prejudice in asserting his Sixth Amendment rights. However, petitioner fails make any showing that the outcome of the case was prejudiced by the substitution of Trooper Cotroneo's hearsay-laden testimony for that supplied by the confidential informant. Assuming *arguendo* that Attorney Leslie should have altered his trial tactics in the manner that petitioner now advocates, his failure to do so did not cause petitioner prejudice. See Strickland v. Washington, 466 U.S. 668, 694 (1984) (requiring showing of prejudice to prevail on ineffective assistance claim).

6

search warrant would undoubtedly be obtained, and if drugs were discovered inside the home, Henderson could be arrested. (Tr. 26). According to Henderson, Inspector Thomas indicated that Henderson's arrest would lead inexorably to the intervention of child protective services to take custody of Henderson's children. (Id. at 27). Following their conversation, Henderson consented to the search of the house, but asked for a stipulation that her children would not be taken if she cooperated. (Id.) Inspector Thomas agreed to the request and Henderson consented to the search in writing. Petitioner now argues that Henderson's consent was a product of coercion.

It is well settled that consent to search, obtained through coercion, is not voluntary. See Schneckloth v. Bustamonte, 412 U.S. 218, 228 (1973). Courts are divided, however, with respect to the coercive nature inherent in a threat that law enforcement will remove the children from an individual's custody.[3] Compare United States v. Ivy, 165 F.3d 397, 402 (6th Cir. 1998), and United States v. Santos, 240 F. Supp. 2d 527, 538-39 (D.N.J. 2004) (suppressing evidence obtained through a search which was conducted after consent was given in response to the threat that police would take away an individual's children), with United States v. Santiago, 428 F.3d 699 (7th Cir. 2005) (holding that a concern for family did not amount to undue psychological pressure and that police behavior which was professional, and devoid of badgering and harassment did not amount to coercion).

In United States v. Ivy, the court held that the totality of evidence established that the defendant's consent was a product of coercion. 165 F.3d at 402. The court concluded that several factors weighed in favor of its finding. First, Ivy was being detained by police

---

[3] The Third Circuit has not directly opined on this issue, and so the court has surveyed out-of-circuit case law in reaching its disposition.

7

at the time of questioning. Id. This detention lasted approximately one and one-half hours, but was part of a larger police interaction that spanned seven to eight hours. Ivy's detention was coupled with threats that if he did not sign a consent form, he and his girlfriend would be taken to jail and Ivy's child would be placed into governmental protective custody. Id. at 402. The level of coercion was heightened when police handcuffed Ivy's girlfriend to the kitchen table and repeatedly threatened to take her child away from her. Id. at 399. The court held that the officer's explicit threats concerning Ivy's small child were improper, and concluded that Ivy's consent was a product of the threats to arrest his girlfriend and take his child, his girlfriend being shackled to the table, the child being removed from its mother's arms, and the repeated police solicitations for consent, all of which tainted the voluntariness of the consent given by Ivy. Id. at 403-04.

By contrast, in United States v. Santiago the Seventh Circuit held that a police officer's statements were not unduly coercive simply because they may have caused the defendant to consider possible consequences which affect his family. 428 F.3d at 705. The officers who confronted Santiago were characterized as "very professional" throughout their fifteen-to-twenty-minute interaction with the defendant. Id. Although testimony of threats involving Santiago's children was presented at trial, the court was unable to find an explicit threat which would have coerced his consent. Id. Rather, the officers matter-of-factly explained that if Santiago were arrested, his child would be taken into protective custody. The court concluded that because Santiago felt as though the search was inevitable, he decided to cooperate with the police investigation in order to insulate his family from the ramifications of his arrest. Id. For this reason, the Santiago

8

court affirmed the district court's analysis that rightful family concern absent harassment is not coercion.

In the instant case, Inspector Thomas did not overtly threaten or coerce Henderson, nor did she in any way taint the voluntariness of the consent. Rather, Inspector Thomas accurately informed Henderson of the current situation, and the possible outcome if she did not cooperate. (Tr. 66-67). The court finds the testimony of Inspector Thomas credible and further finds significant evidentiary value in her testimony. On direct examination, Inspector Thomas stated, "No threats were made to take her children away. I just explained the circumstances that if, . . . we go in the house . . . I could not make any promises to her whether she would or would not be arrested . . . [but if she were to be arrested] . . . [a]t that point child protective services could be called because, therefore, no guardians would be present for the children." (Id.) In addition, Inspector Thomas ensured that the children were out of sight from the police officers during the search, and that they were permitted to go to a room to watch television and eat after-school snacks. (Tr. 71). The purpose of these accommodations, according to both Inspector Thomas and Henderson, was to permit the children to carry on their normal routine and prevent them from seeing the police in their home. (Tr. 28, 71).

The facts of the instant matter are easily distinguishable from those in Ivy, where police encountered the defendant and his family in the middle of the night, handcuffed the suspects, and removed a small child from its mother's arms. Ivy, 165 F.3d at 403-04. Here, the events which preceded the written consent given by Henderson have a distinctly different character. The interaction between Inspector Thomas and

9

Henderson occurred in the mid-afternoon, and the court finds that Inspector Thomas' behavior was not threatening. During the forty-minute interaction, Henderson remained free from custody. (See id.) She was able to change her clothes, get her children from the school bus, and accommodate the children's after-school needs. These allowances consequently reduced the duration of the interaction, as well as the level of coerciveness in the interaction. (Id. at 14). As in Santiago, the short daytime police interaction was extremely professional and lacked any explicit threat by law enforcement concerning a mother's children. Henderson testified that she was upset about the idea of her husband being in jail during her children's youth, and acknowledged that any resistance to the search would inevitably prove to be futile. Henderson's invoked concern for family is not *per se* coercive, and did not taint the voluntariness of the consent to search petitioner's house.

Because the search was not coercive, petitioner cannot show that Attorney Leslie's representation was objectively unreasonable when he failed to file a motion to suppress the evidence found in the house. Counsel cannot be ineffective in violation of the Sixth Amendment based on a failure to raise a meritless argument. United States v. Sanders, 165 F.3d 248, 253 (3rd Cir. 1999). Thus, petitioner's second proposed ground for habeas relief fails.

### C. Suppression of Statements Made Following Petitioner's Arrest

Petitioner argues that Attorney Leslie was ineffective for his failure to file a motion to suppress the statements petitioner made while in police custody. Petitioner argues

that he was questioned in violation of Miranda,[4] and the statements he made were used against him after he invoked his right to remain silent.  Furthermore, petitioner argues that the use of these incriminating statements was a central component to the prosecution's proof of the underlying offense, rendering the alleged Miranda violations highly prejudicial to his case.

Attorney Leslie did not attempt to suppress the incriminating statements because his client denied ever making them.  (Tr. 105-06).  In fact, petitioner informed Attorney Leslie that he did not make a confession while in police custody, that he was read his Miranda warnings, and that any statements he subsequently made were wrongly characterized as a confession.  (Tr. 105).  Because petitioner alleged that his statements were fabricated by the police, suppression was not the correct avenue for Attorney Leslie to challenge the evidence.  Therefore, Attorney Leslie's performance was reasonable when he decided to attack the credibility of the statements rather than the constitutionality of their use in court.  The court finds that this strategy was sound and did not contravene Strickland.  See Buehl, 166 F.3d at 169 (3rd Cir. 1999) (explaining that courts must be "'highly deferential' and 'indulge a strong presumption' that, under the circumstances, counsel's challenged actions 'might be considered sound . . . strategy'" (quoting Strickland, 466 U.S. at 689)).

### III. Conclusion

The court finds that petitioner's trial attorney did not render ineffective assistance of counsel in violation of petitioner's Sixth Amendment rights.  Attorney Leslie's actions

---

[4] Miranda v. Arizona, 384 U.S. 436 (1966).

were reasonable trial strategies to which the court, in hindsight, gives substantial deference. Furthermore, petitioner failed to show a reasonable probability that, in the absence of Attorney Leslie's alleged deficient performance, the outcome of his case would have been different. Therefore, there is no prejudice under Strickland. Petitioner's habeas corpus petition is DENIED.

An appropriate order follows.

    S/ Christopher C. Conner
CHRISTOPHER C. CONNER
United States District Judge

Dated: April 19, 2010

# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | **CRIMINAL NO. 1:06-CR-0234** |
| | : | |
| v. | : | **(Judge Conner)** |
| | : | |
| **VALENTINO HENDERSON** | : | |

## ORDER

AND NOW, this 19th day of April, 2010, upon consideration of defendant's motion (Doc. 75) to vacate, set aside or correct his sentence pursuant to 28 U.S.C. § 2255, and for the reasons set forth in the accompanying memorandum, it is hereby ORDERED that:

1. Defendant's motion (Doc. 75) is DENIED.

2. A certificate of appealability is GRANTED. See 28 U.S.C. § 2253(c). Petitioner shall be granted a certificate of appealability on his claims that his trial counsel was ineffective when he failed to move to suppress evidence discovered during the search of his house.


    S/ Christopher C. Conner
CHRISTOPHER C. CONNER
United States District Judge